UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT ELECTRIC SUPPLY INC., <br><br>  Plaintiff, <br><br> v. <br><br> SOLAR INSTALLS, INC., et al., <br><br>  Defendants. | Case No. 4:18-cv-01435-KAW <br><br> **RE: ORDER DENYING DEFENDANTS' SECOND MOTION TO DISMISS OR TRANSFER VENUE** <br><br> Re: Dkt. Nos. 34 |

On March 5, 2018, Plaintiff Independent Electric Supply, Inc. filed the instant case against Defendants Solar Installs, Inc. ("Solar Installs"), Clear Solar Co. ("Clear Solar"), David Southam, and Paul Southam. (Compl. at ¶¶ 18, 20, Dkt. No. 1.) Pending before the Court is Defendants' second motion to dismiss based on lack of personal jurisdiction or forum non conveniens, or in the alternative, to transfer venue to the District of Utah. (Defs.' Sec. Mot. to Dismiss ("Defs.' Mot. to Dismiss"), Dkt. No. 34.)

Upon consideration of the parties' filings, as well as the arguments presented at the November 15, 2018 hearing, Defendant's second motion to dismiss, or in the alternative, to transfer venue is DENIED.

## I. BACKGROUND

Plaintiff sells solar panels and other components. (Plf.'s First Amend. Compl. ("FAC") ¶¶ 27-28, Dkt. No. 33; see also Chow Decl. ¶ 1, Dkt. No. 18.) On June 24, 2016, Plaintiff opened an account to provide materials to Defendant Clear Solar, typically on a cash on delivery ("COD") basis. (Chow Decl. ¶ 5.) Defendant Clear Solar's President was Defendant Paul Southam. (FAC ¶ 7.)

In 2016, Defendant Clear Solar requested that an account be opened for Defendant Solar

Installs. (Chow Decl. ¶ 7.) Because Defendant Clear Solar's orders had been on a COD basis, Plaintiff required that Defendant Solar Installs submit a written credit application, providing financial information. (Chow Decl. ¶ 7.) On July 15, 2016, Defendant Solar Installs submitted the credit application, which was executed and signed by Defendant David Southam. (Chow Decl. ¶ 8, Exh. B at 2.) The credit application listed Defendant David Southam as the President, and as the only owner and officer of Defendant Solar Installs. (Chow Decl., Exh. B at 1.) Defendant David Southam had also represented himself to Plaintiff as the President of Clear Solar. (FAC at ¶ 19.)

Based on the financial information provided in the credit application, Plaintiff extended credit to Defendant Solar Installs and shipped materials. (Chow Decl. ¶ 9.) Defendant Solar Installs's orders included approximately 34 orders for materials that were shipped throughout California and picked up by Defendant Solar Installs for use in Defendant Solar Installs's projects in California. (Chow Decl. ¶ 10.)

At an unknown time, Defendants Clear Solar and Solar Installs entered into an agreement that allowed for Defendant Solar Installs to perform installation services for all of the contracts entered into by Defendant Clear Solar. (Kershner Decl., Exh. A at 7, Dkt. No. 38.) Plaintiff alleges that through this contract, Clear Solar would market and sell the products, Solar Installs would order the materials and provide the installation services, Clear Solar would be paid by the consumer but not pay Solar Installs, and then Solar Installs would not be able to pay for the materials. (FAC ¶ 20.) According to Plaintiff, "[t]his allowed Clear Solar to collect payment from the owners of the solar installation projects without having any contractual liability to pay for the materials used on the same solar installation projects." (FAC ¶ 20.)

Plaintiff's communications regarding payment of Defendant Solar Installs's account was with Ms. Lynda Eads, who represented herself as the controller of both Defendant Clear Solar and Defendant Solar Installs. (Chow Decl. ¶ 12.) On July 25, 2016, Defendant Clear Solar made a $153,163.37 payment to Plaintiff for materials ordered under Defendant Solar Installs's account. (Chow Decl. ¶ 13, Exh. C.)

On July 18, 2017, Ms. Eads, using the e-mail address lynda.eads@clearsolar.us, requested that Plaintiff provide copies of invoices for materials Plaintiff had shipped to Defendant Solar

2

Installs. (Chow Decl. ¶ 14, Exh. D.) On August 3, 2017, in an e-mail with the subject "Solar Installs/Clear Solar," Plaintiff's director of credit asked Ms. Eads about the status of payments to Plaintiff. (Chow Decl. ¶ 15, Exh. E.) Ms. Eads responded that they were working on getting a payment to Plaintiff. (*Id*.) Ms. Eads also informed Plaintiff's credit manager, Mr. Jeff Chow, that Defendant Paul Southam (President of Defendant Clear Solar) was the only person with authority to authorize payments for the outstanding balance owed by Defendant Solar Installs. (Chow Decl. ¶ 16; FAC ¶¶ 17, 22, 24.) For example, in a September 18, 2017 e-mail, Ms. Eads told Mr. Chow that "[w]e need to get all payment plans approved by Paul [Southam]." (Chow Decl. ¶ 17, Exh. F.) In an October 2, 2017 e-mail, Mr. Chow informed Ms. Eads that Defendant Solar Installs had a $101,074.98 balance past due. (Chow Decl. ¶ 18, Exh. G at 2.) Mr. Chow asked if Ms. Eads had discussed a payment plan with Defendant Paul Southam. (*Id*.) Ms. Eads replied that Defendant Paul Southam had been out of the office and that he had not been able to meet about the materials. (Chow Decl., Exh. G at 1.)

On October 24, 2017, Mr. Chow asked Ms. Eads for an update on Defendant Solar Installs's outstanding balance of $322,395.13. (Chow Decl. ¶ 19.) After the outstanding balance was not paid, Plaintiff filed the instant suit, asserting various claims related to the breach of contract. (FAC ¶¶ 26-65.) Plaintiff alleges that Defendant Clear Solar held over $2 million of Defendant Solar Installs's assets, approximately 50% of Defendant Solar Install's total assets, as a way of making Defendant Solar Installs insolvent and unable to pay their debt to Plaintiff. (FAC ¶¶ 21, 24.) Plaintiff asserts that Defendants David Southam and Paul Southam are brothers. (FAC ¶ 8.) Plaintiff also asserts that Defendant Paul Southam invested approximately $1 million of his personal money into Solar Installs. (FAC ¶¶ 16, 18.)

On July 9, 2018, the Court ruled on Defendant's first motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) based on lack of personal jurisdiction and for forum non conveniens, or in the alternative, to transfer venue to Utah. (Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss ("Order"), Dkt. No. 30.) The Court found, as the facts were alleged in the original complaint, that it did not have jurisdiction over Defendants Clear Solar and Paul Southam, but did have jurisdiction over Defendants Solar Installs and David Southam. (*Id*. at 7-

3

14.) The Court dismissed the causes of action against Defendants Clear Solar and Paul Southam without prejudice. (*Id*. at 15.) Plaintiff filed its first amended complaint on August 8, 2018.

On April 16, 2018, Defendants filed the instant motion to dismiss Defendants Clear Solar and Paul Southam pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and for forum non conveniens, or in the alternative, to transfer venue to Utah. (Defs.' Mot. to Dismiss, Dkt. No. 34.) Plaintiff filed its opposition on September 12, 2018. (Plf.'s Opp'n, Dkt. No. 37.) On September 19, 2018, Defendants filed their reply. (Defs.' Reply, Dkt. No. 39.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make a prima facie showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Love*, 611 F.3d at 608.

### B. Motion to Dismiss for Forum Non Conveniens or Transfer Venue

Generally, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The party moving to dismiss based on forum non conveniens has the burden of showing that there is an adequate alternative forum and that the balance of private and public interest factors favors dismissal. *Id.* at 1142-43. "A plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic)*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011).

4

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.6 (2013) (internal quotations and citations omitted). Thus:

> The standard to be applied is whether, in light of these factors, defendants have made a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (internal quotations omitted).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As with a motion to dismiss for forum non conveniens, a district court considering a § 1404(a) motion to transfer in the absence of a forum-selection clause "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581. Thus, the district court must "weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice." *Id.* (internal quotations omitted).

### III. DISCUSSION

#### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

Plaintiff argues that Defendants Clear Solar and Paul Southam are alter egos of Defendant Solar Installs, and therefore, Defendant Solar Installs's contacts with California may be imputed to Defendants Clear Solar and Paul Southam for purposes of specific jurisdiction. (Plf.'s Opp'n at 5.) "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such

unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citing *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotation and modifications omitted) (hereinafter "*Unocal* test"). While "[t]he standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory . . . courts have [required] that plaintiffs make more than just 'conclusory allegations' to support personal jurisdiction under alter ego theory." *Television Events & Mktg., Inc. v. Amcom Distrib. Co.*, 416 F. Supp. 2d 948, 962-63 (D. Haw. 2006).

Under the "unity of interest" prong, Plaintiff must make "a showing that [one entity] controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (internal quotation omitted). For example, with respect to a parent and subsidiary, "[t]he test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operations." *Id.* (internal quotations omitted). Total ownership and shared management personnel, however, "are alone insufficient to establish the requisite level of control." *Id.* When assessing whether there is unity of interest, courts consider:

> the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard for corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015).

### i. Clear Solar

#### a. Unity of Interest

##### 1. *Commingling of Assets*

The first unity of interest factor is whether the entities have commingled their assets. "Courts find that a plaintiff has sufficiently demonstrated commingling where the evidence shows that the related companies transfer assets among themselves for no ascertainable reason." *Stewart*, 81 F. Supp. 3d at 954-56 (finding that there was no commingling of assets where several related

6

companies used the same bank accounts but kept meticulous records to ensure that "each entity [was] liable only for payments it was contractually obligated to pay.") Courts generally are not concerned when one employee of two companies has access to and control over the bank accounts of both companies *if* that employee is in a managerial position at *both* companies. *Vacless Sys. v. Vac-Alert Ip Holdings, LLC*, No. 2:10-cv-09284-SVW, 2011 WL 13217924, at *5 (C.D. Cal. June 24, 2011).

Plaintiff makes various arguments that Defendants Clear Solar and Solar Installs commingled their asserts. Specifically, Plaintiff alleges that Defendant Clear Solar held $2 million of Defendant Solar Install's assets, equaling more than half of Defendant Solar Install's alleged current assets as of June 30, 2017. (FAC at ¶ 16.) Plaintiff further alleges that a portion of Defendant Solar Install's assets included "alleged contracts with Clear Solar for the installation of solar equipment and components." (*Id.*) Finally, Plaintiff asserts that Defendant Clear Solar represented to Plaintiff that "Paul Southam of Clear Solar had sole authority to pay Plaintiff on behalf of Solar Installs and effectively controlled the funds that significantly compromised [S]olar Installs assets." (*Id.*)

The Court disagrees that Defendant Clear Solar's holding of over $2 million of Defendant Solar Installs's assets is commingling. Instead, the alleged holding shows a separation of assets between the companies because the act of one entity withholding money from another denotes an independence and detachment between the entities. If the assets were indeed commingled, Defendant Solar Installs would have access to the $2 million being "held" by Defendant Clear Solar; it would not be separately held. This fact, therefore, does not show a commingling of assets.

Likewise, any alleged contracts between Defendants Clear Solar and Solar Installs does not show commingled assets because a contract, by its nature, gives an ascertainable reason for the transfer of assets between the companies—in this case, Clear Solar allegedly sold the solar panels to consumers, then contracted with Solar Installs to perform the installation of those panels. (FAC at ¶ 20.) This fact does not show a commingling of assets.

The Court, however, finds that the allegation that "Paul Southam of Clear Solar had sole

7

authority to pay Plaintiff on behalf of Solar Installs and effectively controlled the funds that significantly comprised [S]olar Installs assets" shows a commingling of assets between the two entities. The President of one company controlling the purse strings of another allegedly separate company does not show a separation of funds, particularly when Defendant Paul Southam has no position at Solar Installs. *Contrast with Vacless Sys. v. Vac-Alert Ip Holdings, LLC*, 2011 WL 13217924, at *5 (finding that a managerial employee's control over bank accounts for two companies was of little consequence because the employee held a managerial position at *both* companies). This factor, thus, weighs in favor of finding a unity of interest between Defendants Solar Installs and Clear Solar, as it appears the Defendant Clear Solar controlled the finances of Defendant Solar Installs.

### 2. *Holding of One Entity as Liable for Debts of Another*

Under the second factor, courts consider evidence that one entity is holding itself out as responsible for the debts of the other entity. The Court previously found that "Defendant Clear Solar appears to have held itself out as responsible for Defendant Solar Installs's debts, as it paid for its account." (Order at 12.) In the first amended complaint, Plaintiff alleges that Defendant Clear Solar held itself out as being liable for the debts of Defendant Solar Installs by "Clear Solar paying Plaintiff at least $153,163.37 for materials ordered by Solar Installs" and by alleging that Clear Solar's President was the "only individual authorized to issue payments to Plaintiff" under the alleged contract between the two related entities. (Plf.'s Opp'n at 15.) The Court again finds that this factor weighs in favor of finding a unity of interest between the corporate Defendants.

### 3. *Identical Equitable Ownership*

The third factor is identical equitable ownership. Control over a corporation can be an indication of equitable ownership, but there must be more, such as an "expectation that he would receive[] shares of a corporation." *In re Schwarzkopf*, 626 F.3d 1032, 1039 (9th Cir. 2010). If there is no evidence of common ownership between the companies, and the only relationship is that the president of one company is signing checks to pay for the expenses of the other company, there can be no finding of identical equitable ownership. *21 Century Fin. Servs., LLC v. Manchester Fin. Bank*, 225 F. Supp. 3d 1012, 1029-30 (S.D. Cal. 2017).

8

For this factor, Plaintiff alleges that Defendants Solar Installs and Clear Solar are owned by family members—brothers Paul and David Southam. (FAC at ¶¶ 6-8.) Plaintiff also alleges that Paul and David Southam each represented authority to act on behalf of Clear Solar and Solar Installs. (*Id.*) And finally, Plaintiff alleges that "Clear Solar has retained at least $2 million that belongs to Solar Installs." (*Id.*) Defendants' only rebuttal to this point is to restate Plaintiff's allegations stated above, without any denial. (Defs.' Reply at 3.)

Even assuming Paul and David Southam are brothers, however, they are still two distinct individuals who, according to the pleadings, own different companies. (FAC at ¶ 18.) Equal ownership requires that *both* companies are owned by the same individual or individuals, which Plaintiff does not allege.

As to Plaintiff's second assertion that Paul and David Southam have each represented authority to act on behalf of both companies, while authority to act on behalf of a company shows control, control does not necessarily equate ownership. *See 21 Century Fin. Servs., LLC*, 225 F. Supp. 3d at 1029-30 (finding no identical ownership and control where there was no evidence of common ownership between the companies even though the president of one company signed checks to pay for the expenses of the other company). Defendant Paul Southam had authority to sign checks to pay for the expenses of Defendant Solar Installs, but that only demonstrates control; Plaintiff has not alleged any facts showing actual *ownership* of both companies by the same person or entity. An allegation that two people from separate companies have represented authority to act on behalf of both companies, absent a showing of actual common ownership, does not show identical equitable ownership.

Lastly, Plaintiff's allegation that Defendant Clear Solar held at least $2 million of Defendant Solar Install's assets does not show identical equitable ownership. Although this $2 million equated approximately fifty percent of Defendant Solar Install's assets as of June 2017, the holding of this money appears to be unpaid billables to Defendant Solar Installs. On Defendant Solar Installs's Accountant's Report, this $2 million sum is labeled as "Due from related parties," and "related parties" is further clarified as meaning Defendant Clear Solar. (Kernsher Decl., Exh. A at 2, 7.) Plaintiff cites no authority that unpaid billables constitutes an

9

ownership interest. Therefore, this allegation does not show identical equitable ownership.

Therefore, this factor weighs against finding a unity of interests between Defendants Clear Solar and Solar Installs.

### 4. *Use of the Same Offices and Employees*

The fourth factor pertains to whether the entities use the same offices and employees. The Court previously found that that Defendants Clear Solar and Solar Installs "use the same address, and have at least one employee in common, which weighs somewhat in favor of an alter ego finding." (Order at 13.) In the first amended complaint, Plaintiff alleges that Defendants Solar Installs and Clear Solar are both located at 135 South Mountain Way Drive in Orem, Utah. (FAC at ¶ 19.) Plaintiff further alleges that David Southam represented himself as the President of both Clear Solar and Solar Installs, and that Lynda Eads is the Controller of both companies. (*Id.*) Defendants respond that Plaintiff's assertions are incorrect and untrue, but provide no evidence in support of their denial. (Defs.' Reply at 3.) (*Id.*)

Without any countering assertions by Defendants, it appears that Defendants Solar Installs and Clear Solar share an office. As to the shared employees, Lynda Eads is a shared employee as the Controller of both companies. In their second motion to dismiss, however, Defendants refute the assumption that David Southam continually represented himself as the President of Clear Solar. (Defs.' Mot. to Dismiss at 10.) They assert that "David Southam was temporarily President of Clear Solar, Co. for approximately 3-4 months in 2016." (*Id.*) During the hearing, Plaintiff clarified that it is not asserting that David Southam has *continually* represented himself as the President of both Clear Solar and Solar Installs concurrently, only that there was the brief overlap in 2016, allegedly at the time the contract was made.

The Court again finds that a continually shared employee, a briefly shared employee, and a common place of business weighs somewhat in favor of an alter ego finding, though not heavily.

### 5. *Use as a Shell or Conduit for Affairs of the Other*

Under the fifth factor, courts must assess whether one entity is merely the shell or conduit for the other. The Court previously found that Plaintiff's theory that "Defendant Solar Installs 'was being used as a conduit to obtain materials which would be used, but not paid for, but its

10

related company Clear Solar,' . . . present[ed] no actual facts or evidence in support." (Order at 13.) In the first amended complaint, Plaintiff makes the following allegation:

> Clear Solar marketed and sold its services to end users as an experienced solar installer and would collect payment from property owners for such work, but Clear Solar would not perform the solar installation work. Instead, Clear Solar entered into an agreement with Solar Installs whereby Solar Installs would provide the installation of contracts entered into by Clear Solar. As a result, Solar Installs would be responsible for the ordering and payment of materials for the jobs, but no control over the monies recovered from those contracts. This allowed Clear Solar to collect payment from the owners of the solar installation projects without having any contractual liability to pay for the materials used on the same solar installation projects.

(FAC at ¶ 20.) Plaintiff provides further evidence of the contract between Solar Installs and Clear Solar by way of Solar Installs's Accountant's Report, which states that Clear Solar would "provide for all the installation of contracts entered into by Clear Solar, Inc." (Kershner Decl., Exh. A at 7.) Defendants do not address this allegation, let alone deny it.

Taken as true, this allegation shows that Defendant Solar Installs was being used to allow Defendant Clear Solar to avoid paying for the materials it used to fulfill its contractual obligations, *i.e.*, using Defendant Solar Installs to purchase and install materials for contracts that Defendant Clear Solar entered into. This strongly suggests Defendant Solar Installs was being used as a shell for Defendant Clear Solar to fulfill its obligations while avoiding liability. Without any rebuttal from Defendants, this factor weighs in favor of finding a unity of interest.

*6. Inadequate Capitalization*

The next factor considers whether the entity from which Plaintiff seeks to recover is inadequately capitalized. "Adequate capitalization means capital reasonably regarded as adequate to enable the corporation to operate its business and pay its debts as they mature." *Laborers Clean-up Contract Admin. Trust Fund v. Uriarte Clean-up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984) (quotations omitted). The Court previously found that Plaintiff conclusorily alleged that Defendant Solar Installs was insolvent. In the first amended complaint, Plaintiff provides new facts to support this allegation, specifically that by November 2017, Defendant Solar Installs was insolvent, as it had indicated to Plaintiff that "any attempts to collect the amounts due from Solar

11

Installs 'will prove useless.'" (FAC ¶ 21.) Defendant Solar Installs did not have "capital reasonably regarded as adequate to enable the corporation to . . . pay its debts as they mature[d]." (*Id.*) Additionally, it appears Defendant Solar Installs did not pay for its own debts; rather, Defendant Clear Solar paid for at least $153,163.37 in materials ordered from Plaintiff by Solar Installs, further suggesting that Defendant Solar Installs itself did not have the resources needed to pay its own debts. (Chow Decl. ¶ 13.) These facts, unrefuted by Defendant, shows that Defendant Solar Installs was unable to pay for the product it obtained. The Court concludes that this factor weighs in favor of a finding of unity of interests and a level of control between Defendants Solar Installs and Clear Solar.

### *7. Disregard for Corporate Formalities*

The seventh factor looks to any disregard of corporate formalities. To show a disregard for corporate formalities, the Ninth Circuit has looked at facts as proper documentation of transactions between the entities, adequate capitalization of each related company, individual contracts entered into by each company, and if each company pays its own taxes. *Ranza*, 793 F.3d at 1074. The sharing of some employees is less important to this factor, as that "does not undermine the entities' formal separation." *Id.* Additionally, it is appropriate for a parent company to be heavily involved in the subsidiary's operations, including exercising control over budget and retaining approval authority for large purchases, as long as the parent company is not dictating "every facet" of the subsidiary's "routine matters of day-to-day operation." *Id*. (quoting *Unocal*, 248 F.3d at 926.) The appropriateness of the above described level of control comes from the inherent relationship between the two entities as being corporately related. *Id*.

Plaintiff states that Defendants shared corporate officers and employees, that David Southam represented himself as president of both companies, and that Paul Southam, as the President of Clear Solar, claimed sole authority to authorize payments from Solar Installs to Plaintiff. (FAC at ¶ 22.) Plaintiff does not, however, allege any facts relating to either company's record-keeping.

Plaintiff's allegations regarding shared employees and officers alone "do[] not undermine the entities' formal separation." As the Controller of both companies, Ms. Eads could manage the

12

1  finances of both companies. Notably, however, Ms. Eads did not regard corporate formalities
2  when she was communicating via email with Plaintiff—she used her Clear Solar email address to
3  communicate with Plaintiff regarding payments owed by Solar Installs. (Chow Decl. ¶ 14, Exh.
4  D.) As a shared employee/officer between the corporations, it appears Ms. Eads did not show
5  regard for corporate formalities.

More importantly, the uncontested allegation that Paul Southam, as the President of Clear Solar, had sole authority to approve of payments from Solar Installs to Plaintiff shows a lack of corporate formality. To have the President of one company control the purse strings of another company that he is not associated with suggests a disregard for corporate formalities. While the courts permit this kind of authority when there is a clear corporate relationship between the two entities (such as parent-subsidiary or sister corporations), no such relationship exists here. *See Ranza*, 793 F.3d at 1074. This factor weighs in favor of finding a unity of interest.

### 8. Identical Officers and Directors

The last relevant factor considers whether the entities have identical officers and directors. Courts have typically found that even multiple overlapping officers and directors do not provide a sufficient basis for piercing the corporate veil, absent other indicia of a unity of interest. *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (finding allegations insufficient where parent and wholly owned subsidiary had overlapping officers and directors); *Eagle Canyon Owners' Ass'n v. Waste Mgmt., Inc.*, No. 16-CV-2811-LAB (WVG), 2017 WL 3017501, at *2 (S.D. Cal. July 13, 2017) (same).

Again, Plaintiff points to David Southam's representing himself as President of both companies, and Lynda Eads being the Controller of both companies.[1] (FAC at ¶ 6.) Defendants do not dispute these allegations, nor suggest that there are other directors and officers of each company that do not overlap. While there is one definitive overlapping officer, Ms. Eads, David

---

[1] In the absence of the Controller reporting to a higher financial officer or director such as a Chief Financial Officer or some superior controller, the Court may find that Lynda Eads, as the Controller of both companies was an officer of both companies. *See Kyung Cho v. UCBH Holdings, Inc.*, No. C 09-4208 JSW, 2011 3809903, at *11 (N.D. Cal. May 17, 2011) (viewing a corporate controller as a corporate officer for purposes of scienter analysis).

13

Southam's representation as the President of both companies appears to have been a mere three to four months. (Def.'s Mot. to Dismiss at 10.) The Court finds that based on this limited overlap, this factor weighs only slightly in favor of a unity of interest. cv

### 9. *Balancing the Factors*

Here, seven of the eight applicable factors weigh in favor of finding a unity of interest: commingling, liability for another, mere shell or conduit, shared offices and employees, inadequate capitalization, disregard for formalities, and overlapping officers. These factors combined show that Defendant Clear Solar had control over Defendant Solar Installs, such that the two corporations did not have separate personalities. The fact that Plaintiff did not plead sufficient facts to show identical equitable ownership does not outweigh the remaining factors that show unity of interest. As the majority of the factors weigh in favor of finding a unity of interest, the first prong of the *Unocal* test is satisfied—finding a unity of interest between Defendants Solar Installs and Clear Solar sufficient to proceed to the second prong of the *Unocal* test.

### b. Adherence to Fiction of Separate Entities Would Promote Injustice or Fraud

The second prong of the *Unocal* test asks whether failure to disregard the separate identities would result in fraud or injustice. *Ranza*, 793 F.3d at 1073. Here, Plaintiff argues that failing to find that Defendants Solar Installs and Clear Solar are alter egos of one another would promote injustice and fraud due to the payment authorization scheme between Clear Solar and Solar Installs, that left Solar Installs "insolvent and unable to pay its obligations, including the debt due to Plaintiff in this lawsuit." (FAC at ¶ 24.) Defendant does not address these arguments in their motion or reply brief.

If Defendant Clear Solar is dismissed once again from this case, Plaintiff will be left with one insolvent corporate defendant unable to pay damages even if found liable. With Defendant Solar Installs unable to pay, injustice will be promoted, especially in light of Defendants' alleged plan to have Defendant Solar Installs be responsible for ordering and payment of material for jobs entered into by Defendant Clear Solar, while Defendant Clear Solar collected payments for those jobs without being liable for the payment of the materials used in those jobs. (FAC ¶ 20.)

The Court concludes that Defendant Clear Solar is an alter ego for Defendant Solar

14

Installs, and Defendant Solar Installs's contacts may be imputed to Defendant Clear Solar. As the Court previously found sufficient contacts to support personal jurisdiction regarding Defendant Solar Installs, the Court finds that there is personal jurisdiction over Defendant Clear Solar.

### ii. Paul Southam

The Court previously found that the original complaint did not allege facts sufficient to find personal jurisdiction over Defendant Paul Southam because he did not have direct California contacts relating to this case and his role in approving payments on Defendant Solar Installs's accounts, as pled, did not establish personal jurisdiction. (Order at 14.) Plaintiff now alleges that Defendant Paul Southam had sole authority to authorize payments on behalf of Defendant Solar Installs, even though he seemingly had no corporate connections to Solar Installs, inter alia. (FAC at 5-7.)

A person's association with a corporation who causes harm in the forum state is not sufficient to find personal jurisdiction over that person. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). The corporate form may be ignored only if the harm comes about "by virtue of the individual's control of, and direct participation in the alleged activities." *Wolf Designs, Inc., v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (finding personal jurisdiction over a corporate officer who "made the final decisions" for the corporation which caused the alleged harm). "[M]ere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation." *Id*. The corporate officer must be the "guiding spirit" or "central figure" behind the challenged corporate activity. *Davis*, 885 F.2d at 524. In other words, the corporate officer must be a "primary participant in the alleged wrongdoing" and have "control of, and direct participation in the alleged activities." *Winery v. Graham*, No. C 06-3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007).

Conclusory allegations of wrongdoing by the corporate officer are not sufficient to pierce the corporate veil and establish personal jurisdiction. *Clerkin v. MyLife.com, Inc.*, No. C 11-00257 CS, 2011 WL 3607496, at * 1-2, 4 (N.D. Cal. Aug. 16, 2011). The allegations must include *how* the corporate officer "controlled or directly participated in the alleged fraudulent scheme." *Id.* Additionally, courts have considered whether the corporate officer had control over the company's

15

assets in determining personal jurisdiction. For example, in *Johnston Farms v. Yusufov*, the plaintiff brought a breach of contract claim against a company and its president for failure to pay for product that had been shipped. No. 1:17-cv-00016-LJO-SKO, 2017 WL 6571527, at *1 (E.D. Cal. Dec. 26, 2017). Although the individual defendant lived in New York, the district court found that the exercise of specific personal jurisdiction was appropriate because in his capacity as president, the defendant "controlled or was in a position to control the disposition of [the company's] assets to satisfy all outstanding . . . obligations such as the obligation allegedly owed to [the p]laintiff." *Id.* at 5 n.3.

Like the defendant in *Johnston Farms*, Defendant Paul Southam was the individual who "controlled or was in a position to control the disposition of" assets to satisfy the obligations of Defendant Solar Installs. Specifically, Ms. Eads had informed Plaintiff's credit manager that Defendant Paul Southam was the only person with authority to authorize payments for the outstanding balance owed by Defendant Solar Installs. (FAC ¶¶ 17, 22, 24.) By making the prior $153,163.37 payment, then being the only person with authority to authorize future payments on behalf of Defendant Solar Installs and refusing to make the payment that ultimately breached the contract between Defendant Solar Installs and Plaintiff, Defendant Paul Southam voluntarily interjected himself into this controversy. Thus, Defendant Paul Southam was a direct participant in the alleged actions that are the foundation of this case.

Defendants argue that because Defendant Paul Southam acted in his corporate capacity, not his individual capacity, he cannot be held liable. Again, the Court disagrees. As stated in the prior order, "[t]he Ninth Circuit has rejected the argument that, for purposes of personal jurisdiction, 'employees who act in their official capacity are somehow shielded from suit in their individual capacity.'" *Rimes v. Notewar Dev. LLC*, Case No. 09-cv-281-EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989)).

Defendants' cited cases are not to the contrary. In those cases, the courts found no personal jurisdiction over corporate officers where the plaintiffs failed to allege specific facts that the corporate officer controlled or directly participated in the alleged fraudulent scheme. *See*

*Clerkin*, 2011 WL 3607496, at *4 (finding no personal jurisdiction where the plaintiffs "ma[d]e only broad, general allegations against [the corporate officer]," and provided no specific facts to suggest that the corporate officer "controlled or directly participated in the alleged fraudulent scheme"); *Just Film, Inc. v. Merchant Servs., Inc.*, No. C 10-1993 CW, 2010 WL 4923146, at *6 (N.D. Cal. Nov. 29, 2010) (finding no personal jurisdiction over corporate officers where the plaintiff did not allege how the individual defendants directed and controlled the entities alleged to have engaged in wrongful conduct, only that they did); *Marsh v. Zaazoon Solutions, LLC*, No. C-11-05226 YGR, 2012 WL 952226, at *9 (N.D. Cal. Mar. 20, 2012) (same). Those cases are therefore distinguishable, as here, Plaintiff has specifically alleged that Defendant Paul Southam was the only individual who could pay Defendant Solar Installs's debts, such that his refusal to authorize payment directly caused Defendant Solar Installs to breach its contract with Plaintiff. By withholding the payment that he was solely authorized to make, Defendant Paul Southam was a "primary participant in the alleged wrongdoing" and "had control of, and direct participation in the alleged activities." *Winery*, 2007 WL 963252, at *5.

At the hearing, Defendants appeared to argue that the Court should not find jurisdiction over Defendant Paul Southam unless he was an alter ego of the companies. This conflates the alter ego theory with the primary participant theory.[2] Under the primary participant theory, the Court need not conclude that Defendant Paul Southam was an alter ego of either company; rather, jurisdiction is based on his specific actions, namely being the only person who could authorize payments on Defendant Solar Installs's debts, and then failing to do so. Accordingly, this Court finds specific personal jurisdiction over Defendant Paul Southam.

**B. Motion to Dismiss for Forum Non Conveniens or Transfer Venue**

Having found jurisdiction over Defendants Clear Solar and Paul Southam, the Court DENIES the motion to dismiss based on forum non conveniens or to transfer venue. Defendants raise nearly identical arguments in their second motion to dismiss as they did in their first. (Defs.'

---

[2] While the Court finds jurisdiction over Defendant Paul Southam under the primary participant theory, the same conclusion could be drawn if the Court applied alter ego theory as to Defendant Paul Southam.

17

Mot. to Dismiss at 11-13.)

In its prior order, the Court found:

> First, the evidence and witnesses are located in both California and Utah, rendering this factor neutral. Second, Defendants do not suggest that compulsory process for attendance of unwilling witnesses is unavailable in California or prohibitively expensive; while Defendants would have to pay to fly witnesses out to California, Plaintiff would bear similar costs if the case was transferred to Utah. Third, while Defendants argue that a judgment obtained in Utah would be enforceable in Utah, they make no argument that a judgment obtained in California would not also be enforceable in Utah. (*See* Defs.' Mot. at 7.) Fourth, the Court disagrees with Defendants' conclusory argument that practical considerations make trial more efficient and less expensive in Utah instead of California, particularly where Plaintiff's evidence and witnesses are primarily located in California. Fifth, Defendants cite to no administrative difficulties flowing from court congestion . . . . Sixth, California has an interest in this localized controversy, as the case involves misrepresentations made in a contract performed and executed in California, as well as the failure to pay for product bought and used in California pursuant to that same contract. Seventh, this Court is capable of hearing the common law claims that are brought in the case. Finally, the Court must give some weight to Plaintiff's choice of forum.

For these same reasons, the Court finds that Defendants do not make a clear showing of oppression and vexation disproportionate to Plaintiff's convenience, or that trial is inappropriate because of considerations affecting the Court's administration. As Defendants raise no new arguments, the Court again concludes that dismissal based on forum non conveniens or transfer to Utah is not warranted.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES the motion to dismiss for lack of personal jurisdiction as to Defendants Clear Solar and Paul Southam, and DENIES the motion to dismiss based on forum non conveniens or to transfer venue.

IT IS SO ORDERED.

Dated: November 21, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge

18